I'm Mr. Cowell, did not challenge the withholding determination from the immigration judge at the BIA level, right? Yes, sir. So we're only looking at asylum? That's right. Okay, I just wanted to make sure. And I understand that your client also says if he didn't meet his burden on asylum, he knows he doesn't meet his burden on asylum if he's not credible, right? Right, your honor. Okay. With that background, I wanted to make sure I had those down before I got there. So we're really looking at credibility. Yes, sir. So my argument here is that the agency, the credibility is not supported by substantial evidence. The first reason is that the agency relied upon the petitioner's testimony regarding what Lutheran means to him. And according to BIA, the petitioner did not provide a coherent answer to the IDS inquiry as to what Lutheran means. But the record shows that the petitioner testified, pointed out that when he was asked what is Lutheran, and he stated on record, because of the faith, so there is righteousness. Suppose that we agree with you on the theological issues, or not on the theological issues themselves but on the relevance of the theological issues to the legal questions in this case. What about, that was not the only grounds that the IJ identified. And maybe if I could ask you to turn in particular to the discrepancy in his travels to or near Vietnam. So as I understand it, he told the asylum officer that he went to Vietnam and stayed there for a while. And then at the hearing he said he just went to the border, which you could maybe sort of explain as not that big of a difference, except that he had told the asylum officer a fairly detailed account of how he went to a remote crossing so that he could get across the border without being inspected, and that seems like a pretty big discrepancy, so why isn't that? For several reasons, first, again, the nature of the credible interview, actually, the interview document, it does contain a caveat, and it states in capital letters in bold, the following notes are not a verbatim transcript of this interview, these notes are recorded to assist the interview officer in making a credible fear determination, and the supervisory asylum officer in interviewing the determination, there may be areas of the individual's claim that were not recorded, explored, or documented. So these notes are what the asylum officer wrote down, and whether or not it reflects Did you ever question the admission of the interview record for the BIA? No, Your Honor. I don't think you did. Yeah, but it's in the record, the caveat. Just a minute. If you don't question the information that's in this interview that he had with the asylum officer, when he told the asylum officer that he'd left Vietnam on two different occasions, he wasn't confused about it, he said that, and the asylum officer repeated what was said in the summary, and again, your client never questioned it. How do we get rid of the inconsistency that's pretty obvious? Actually, it's not pretty obvious, Your Honor. Actually, on page 450 Well, I mean, at the hearing, he testified he'd never been to Vietnam. Yeah. Actually, that's what one part of the interview notes suggests. I point out direct course attention to page 450 of the administrative record, and when the asylum officer asked the petitioner, could you return to Vietnam and live there legally now? He said, no, I cannot. Actually, the question before that, what's your immigration status in Vietnam? He said, I didn't have any legal status. I was just passing the border. But the thing that bothers me the most about it is that now you're questioning what he told the asylum officer. You've never questioned the interview record in front of the underlying court. Your client was under oath. He had an interpreter. He said he understood the interpreter. You wouldn't reschedule the interview to wait for your lawyer. And yet, now you want me to say, guess what? There's no inconsistency. Again, substantial evidence review. I take your point that we should be careful in our use of the officer interview notes, but this doesn't seem to be a problem of omission that the officer left stuff out. I think the concern with the inconsistency is the level of detail of the officer's notes relative to the later testimony. Yes, sir. We bring up this issue of the process of the critical fear interview. It's just to point out that, again, this interview process by nature is not reliable. So we just ask the limited weight to be given to the assignment officer interview notes. And also, let's just assume there's no denial. There's some confusion regarding whether or not the contender was actually inside the  Whether or not he was inside the building or outside of the building. Regardless, that would not reflect negatively upon his honesty, because he had nothing to gain. The BIA apparently did not agree, saying that this is material, because it will show that if a person wanted to return to the home country, then they were caught against his credibility of fear. But in this case, the contender was traveling between China and Vietnam. So the two cases cited by the BIA to show the materialness of this inconsistency in relation to his assignment application, the BIA cited two cases. There's one is a C. But to say that there's nothing to be gained is not exactly right, because he's now asking us to say he fears persecution in China. Then, we see right in the record, he departs to Vietnam, but he goes back to China. So that kind of operates against him, doesn't it? I mean, he went to Vietnam and he didn't do anything about it? And he wasn't scared to go back to China? It doesn't – in this case, it doesn't – I mean, and the fact is that the fact that he didn't tell at the first hearing that he went to Vietnam was a sure cinch, that he didn't want to have that in there, because if he did, it was going to go against him, that he didn't fear going back to China, and that that testimony wouldn't be comparable to the BIA, wouldn't be helpful to his case. That's why it's important when you say there was no benefit. Why isn't there a benefit? Because the country that he returned from is Vietnam.  So because the petitioner made it clear in Vietnam, on page 450, I don't think in Vietnam that Christian beliefs is allowed. But if that's – I guess if that's the case, then there would have been nothing wrong and then no benefit to tell the same story twice, right? To testify to that and to candidly say, but I can't go there anymore, and the reason why I chose not to stay there is because I couldn't practice my religion. So I'm not sure that's helpful that he acknowledged that Vietnam may not be a place he could resettle or seek asylum, but then said he never went to Vietnam at all a second time. And because – I still doubt whether or not he actually entered Vietnam when he told the asylum officer, because he was just saying, I was just passing the border, so it could be in the border area, so it's on which side of the country. But on substantial evidence review, if you could take two reasons for that, that that was an explanation that he got up to the border and then realized, why would I go to Vietnam? I can't practice my religion there either. Or that he, as he testified to in some detail, crossed the border, entered Vietnam, and then came back and explained to the asylum officer, but not to the immigration judge, why he came back. That's true. The interview notes says that because it is not a verboten transcript of what the petitioner said at the interview, so there might be something lost in the translation. We don't know. So we are – the theory we are advancing now is just don't put too much weight on these interview notes. Mr. Lee, could you speak to the documents that the agency relies upon, too? The registry document? House registry document? And the fine? And the fine and receipt document? Yes, sir. In the registration document, because it says that he has an elementary school level of education, and then he has a high school diploma, and I think that does not cut against his credibility, because the household registration itself said that if you – if anything – if there's any alteration to the information, any change to the information must be applied before it can be changed. So it's just a lack of – But that isn't exactly the way it is posted up. Yes, sir. He states he possesses only an elementary school education in the document. It has never been changed since he – even though he's applied for a visa to go to The brother's document doesn't say that. The brother's document was changed. And so in the only response that your client had when quizzed about why do you put that in there, why don't you do something about that inconsistency, he says, well, I've got more education than that, which I don't think explains the inconsistency at all. Your Honor, it's just a lack of diligence on the petitioner's part just to update the information in the register. So there's no – I don't think there's any discrepancy there, let alone the discrepancy that reflects negatively upon his character or the honesty. I understand you're saying you don't dispute that it was inconsistent, but you can't be faulted for it. Well, we have a case named He, not one of the cases we've had here that you've been involved with. That case says that you do have a problem if there's inconsistency and you're challenging a credibility finding. If you admit it's inconsistent, well, then you're in trouble under He. Yeah, and then you should be given an opportunity to explain. In this case, the explanation is that – Yeah, the explanation actually lies in the record, Your Honor, because the Household Register itself says that any alteration should apply for registration at the office. So any change should be – we should apply for the change before the change can be made. So it's just the petitioner did not go to the registrar's office to update the information. That's all. And may I just address the unfinished issue? Very briefly. Oh, just very briefly. And actually, in this case, that's clearly the spelling of the name of the town, hometown. That clearly is a translational error, Your Honor. In response, petitioner actually was shown the original Chinese version of the – not fine receipt, the diagnostic certificate. It does say that the name of the town he was from is Jiangjing versus Hongjing. What about who paid the fine? Pardon me? Oh, who paid the fine? Yeah, that's clearly – we just look at the record itself, and it says the paying unit or paying party, paying individual. So petitioner testified that because the fine should be issued to the person who was penalized. Actually, that's – again, that's exactly what the Chinese version says. So there's – I don't – I wouldn't say there's a mistranslation. There's an imperfection in the translation. So if – so my point is if the court rely on that, I will probably deny my client's petition. Because I was an attorney involved in the hearing, I was an attorney involved at a penalty level before the BIA, so probably I would do an ineffective assistance of counsel because the Chinese receipt does say to be delivered to the person who got penalized. That's the literal translation should be. Thank you. We've taken you past your time, but you may have two minutes for rebuttal. Mr. Spurlock? The petitioner's inconsistent testimony with his asylum interview testimony about his entry and departure from Vietnam, returning to China, is both – it's both substantial evidence to support the entire adverse credibility determination and deny the petition for review because it not only is an inconsistency, it also shows under the Zhihui or the Laho case that when an alien returns to their home country, when they're claiming to have been experiencing persecution, that that alone supports an adverse credibility determination. Before we get to that issue, Mr. Spurlock, there's a paragraph in the board's decision devoted to the – Mr. Cao's inability to coherently describe the Lutheran faith. Are you defending that portion of the board's reasoning? Yes, Your Honor. We're defending that decision because, first of all – Maybe I can start out by, what is the government's position on the doctrine of justification by faith? I think our position is consistent with what the COSA court said in that case, which is, yes, you're not allowed to go through and do a deep quiz or sort of academic investigation of what the person's understanding is of their faith or comparative to other faiths or whatnot like that, but that's not what we have in this case. We just simply have a – simply, which is also contemplated by the COSA case, that there's nothing wrong with simply saying, tell us about your faith. Right, and he answered the question. So, I mean, he's asked, you know, what is Lutheran, which is – that's the judge speaking in English, kind of an idiomatic way of phrasing the question, but that's what she said. What is Lutheran? What does that mean? He says he doesn't know. There's back and forth with the interpreter asking about writing down the characters, which suggests some difficulty in understanding the translation. And then he comes up with, because of the faith, so there is righteousness. And so I take it the government's view is that that is not a correct statement of the Lutheran doctrine of justification by faith? I think the government's position is that the immigration judge's determination that that was not a coherent answer, first answering, I don't know, and then only providing essentially a two-word answer, was not plausible, that he would only, after spending – Was he asked to elaborate? Was he asked to elaborate?  I mean, yeah, it's a short answer. Yeah, I know he was not. He was not, okay. Well, let me correct myself. He did – she did say, I think she said, that's it. That's what Lutheran means. And he said, that's my understanding. That's my understanding. That was the extent of the – But she didn't say, can you provide more detail? No, she did not.  And so, I mean, I'm not sure it matters whether he's, you know, right in some sense about what, you know, Lutheran doctrine is, because I don't think it's our place to say that, and certainly not the board's. But, you know, when one looks at, you know, the Augsburg Confession of 1530, which I think most Lutherans regard as a canonical statement of the faith, what he's saying is a very close paraphrase of parts of that. So, it just seems very odd that the board is pronouncing that, you know, an incoherent doctrine. Why is that appropriate for the board to say? The two words that he said that he didn't – wasn't able to give more explanation. I mean – Well, he wasn't asked to give more explanation. Right. Well, I mean, he could have provided more than two words, and when he said – when she was asked, do you have anything else to say, he said, no, that's my understanding. Is the government's position that any creed that can be expressed briefly is incoherent? I think – I honestly don't know, Your Honor. I think what the point is, is that the immigration judge found that his explanation for having spent two years going not once a day, but – I mean, not once a week, but twice a week for two years, and supposedly took education classes. Initially, and moreover, the argument of, well, there may be something to those two words. They may have completely defined Lutherism. It may be correct. He never argued that before the board. Well, but I think the problem on substantial evidence is that the IJ just doesn't know. So there's nothing in the record here that would suggest other than the IJ's take on Lutheranism, which isn't substantial evidence. So I guess, again, is the government standing on this as a ground for the evidence? No, we're not standing on it, Your Honor, because, as I said before, the Vietnam – is ample substantial evidence of adverse credibility. Why doesn't – if we think that this was improper, this theological freelancing by the IJ was improper, why doesn't it infect the whole adverse credibility finding? I mean, so normally under a law, we look at under the totality or the valid grounds sufficient. But aren't there cases where you have some grounds that are sort of the 13th chime of the clock that just kind of infects the whole thing? I don't believe so, Your Honor. I think in the totality – you can apply the totality of the circumstances in this case. Do you think – in this case, sure, but do you think there's ever a case where you would have a ground that was so bad that it infected the others? I suppose it's possible, but I feel – So just, you know, hypothetically, like if the IJ said, you know, I'm finding you not credible because of, you know, inconsistency number one and inconsistency number two, and three, you're from China and I just don't trust Chinese people. I mean, there, we wouldn't go through a law and say, well, the first two grounds are okay, so maybe we can uphold this. Or what would you say about the whole thing just has to be thrown out? I think you can – I think you can – the court can definitely say this particular ground that the immigration judge of the agency put forth as a basis for adverse credibility is very wrong. And unless that's all there is, if there's – the court would still need to, under the totality of the circumstances, weigh the other – Even in the hypothetical where the IJ, like, invoked an explicitly racist ground for finding the person not credible, we'd have to uphold that if the rest of what she said was okay? I think under the totality of the circumstances, you would. You would have to consider – Well, in COSO, which you've cited, there is some discussion that the adverse – this adverse credibility assessment, the one arising from the IJ's improper inquiry into the respondent's religion, infected the IJ's entire decision and led the BIA to affirm the IJ's demand for independent corroborative evidence at that point. But, I mean, in this case, the board leads with this religious discussion, so why isn't this the same as COSO? Well, I think in the – first of all, the COSO case was really almost more of a bias case. I think they had found bias against the immigration judge. How do we know this one isn't? Because no one ever alleged that there was bias, or at least they did raise bias, I believe, before the board, but then they didn't raise bias before this court, so they abandoned the bias discussion. But I don't even recall – So, bias in terms of due process claims separately as opposed to substantial evidence? Yes, in that the immigration judge in, I believe, the COSO case exhibited such a dislike for the petitioner in that case's religion and her belief system that that sort of spilled onto the record and was clear on the record. I think that alone makes this case different from that case. And that immigration judge was going far beyond asking a simple, what is the basis of your – tell me about your faith? What is your faith? And I don't – the immigration judge never, in this case, made any negative comments about Lutheranism or what this – Well, I mean, unless you consider saying that it's incoherent to be a negative comment. As a response to what he said, that it didn't make sense, so – I'm having a tough time with that argument. I'm sad the government is even making that argument because it seems in COSO that they said, without a benchmark other than the IJ's views, it's unacceptable to test the scope of the petitioner's understanding of her religion. And there was no benchmark in this case except the IJ's views. And yet the IJ comes out with this idea. And frankly, looking at what he said, because of the faith, so there is righteousness, I don't think is an out-of-concept statement. I may not be the most religious person in the world. I may not be a good religious person. But that seems pretty significant to me. And then all of a sudden the IJ, on her own idea, says, well, he doesn't even know what Lutheranism is. When I thought, boy, because of the faith, so there is righteousness, I thought that was pretty good. So I'm just having a tough time with your argument. If I'd have been in your stead, I wouldn't have even gone here. I just said, forget this. Let's go back to the things Judge Smith's been quizzing about. That's always a good idea. We should stay on those things. I don't think this was a major part of the adverse credibility decision. I think this was essentially he comes out before the board and essentially says, yeah, but the immigration judge was assuming I was Lutheran. So I would have this knowledge about Lutheranism. But that's not what the board says. Yeah, we accept that. This isn't about what he knows about Lutheranism or doesn't know about Lutheranism. It just has to do about what he picked up on. But I guess I'll let you finish your argument. Sorry, I didn't mean to interrupt. But I think the board had a good point, which was this isn't about what you believe or what your faith is. This is simply about you spent two years in this institution. You didn't become a Lutheran. You just went to that church. What can you tell us about the church? It wasn't testing his level of knowledge about Lutheranism, about his own faith. Can we go back to, I guess, the Vietnam question? So the inconsistency here is premised on the fact that he did, in fact, enter Vietnam. Is that clear from the record? And where is the government's best site for that? That he entered Vietnam? Yeah. I think it's in the asylum officer notes where he's – I would direct the – there's a lot of discussion that maybe it could have gone this way or that way. But if you look at page on AR 451, that's where the asylum officer reads a summary of his testimony. And in that summary of the testimony, he again says, I returned to China from Vietnam, which seems pretty clear that he was in Vietnam. You said it twice, right? He said it multiple times. And as I said, it was in the summary of what the asylum officer – again, that's on, I think, 451, where there's a summary of what he said. And then that summary, you left China, went to Vietnam, and returned to China, which seems pretty clear. It appears there are no further questions. Thank you. All right, thank you.  I just want to point out one thing, that actually the church attendance issue, if you want to look at the BIA's decision, I think that's the first and foremost issue on the agency's mind in finding an adverse credibility determination. And the BIA discussed a host of issues, and then the church issue is the very first one that the BIA discussed. And then almost like – and then the BIA said the IJ also found – so it appears to me that all the other discussions are just afterthought. I guess the IJ at nine of the order does raise this first, but then says the biggest issue in this case relates to respondents' trip to Vietnam. And so how much can we read into the priority of the ordering of paragraphs that the board takes? I guess – and I guess I should say, in considering this issue, are you raising any kind of general bias claim that the IJ was biased as opposed to it was just incorrect in finding an inconsistency? I wouldn't go that far that the IJ is biased. It's just that actually we are looking at the BIA's decision, and the BIA believe that the church attendance, the petitioner's knowledge about Lutheran is the most important factor that IJ took into account in its decision. And because that ground was invalidated, it appears it will be invalidated, and then the rest will just collapse. Thank you very much. Thank you, Your Honor. Mr. Li, you've argued five cases this week. The court appreciates your assistance. Thank you. Thank you, Mr. Spurlock as well. And the case is submitted.
judges: SMITH, MILLER, JOHNSTONE